PIERRE WARTELLE *v.* AMELIA M. KING et al.

Actions for torts sounding in damages are prescribed by one year.

An action instituted on the 14th day of the month, for a tort committed on the 13th day of the same month of the preceding year, is prescribed.

A PPEAL from the District Court of St. Landry.
*J. G. Olivier*, and *Garland & Lestrapes*, for plaintiff. *T. H. Lewis* and *Porter* and *Swayze*, for appellants.

BUCHANAN, J. The defendants purchased, on the 6th January, 1852, at probate sale, a tract of land belonging to the succession of *George King*, deceased. The plaintiff had, by sufferance of the owner, enclosed and cultivated this land, (which adjoined land belonging to himself,) for several years. That the plaintiff had no title to the land himself, and that the same belonged to *George King's* succession, is not only proved by his acknowledgments, as testified by his own witness, but by his act, in attending the probate sale, and bidding for the property. In fact, the ownership of the land is stated in the petition to have been in *King's* estate.

Plaintiff's evidence also shows, that after this probate sale, plaintiff made a voyage to France, and, on the eve of his departure, ordered his overseer to cultivate this land, after it had been thus adjudicated to the defendants, in his presence, and with his consent. In conformity to this order, plaintiff's overseer planted corn and cotton on a portion of the land in question. It must be observed, that at the time of the adjudication, there was some stubble cane on the land, which plaintiff reserved the right of digging up, in order, as he expressed himself, " that defendants would not get the benefit of the stubble."

Under these circumstances, after demands of possession of the land, made verbally through a mutual friend of the parties, and in writing by a letter to the plaintiff's wife, (plaintiff being absent from the State,) the defendants, on the 10th April, 1852, wrote formal notifications to the overseer of plaintiff, and to himself and wife, not to continue to cultivate and possess the land, under pain of being treated as trespassers.

The letter to the overseer is proved to have been delivered to him on the 13th April, 1852. The letter to plaintiff and wife is alleged in the petition to have been given to Mrs. *Wartelle* some days previously; but in the argument in this court, both the letters are assumed to have been delivered on the same day, the 13th April, 1852. The letter to Mrs. *Wartelle* concludes as follows: "Now, therefore, you are hereby again warned, and for the last time, to desist at once from the further cultivation of said land, and required, as you have been heretofore repeatedly required, forthwith to remove, or cause to be removed, from said land, all the enclosures which you claim to belong to you. You are notified, that in the event of your refusal or failure to desist from the cultivation of said land, or to remove those enclosures therefrom, that they will hold you responsible in damages in a civil action; that they will proceed against you as trespassers, under

the criminal laws of the State; and further, that they will, immediately after the 15th day of the present month, proceed to cause said enclosures to be removed, forcibly, if necessary."

The plaintiff's agent complied with this requisition, and removed the enclosures around the land purchased by the defendants at the probate sale, as aforesaid, on the next day after receiving the notices. The consequence of removing these enclosures, is alleged in the petition to have been, that the cattle from the adjoining prairies entered upon the land, and destroyed the growing crop of corn, cotton and sugar cane. For the loss thus sustained, plaintiff brought, on the 14th April, 1853, this action against defendants, assessing the damages in his petition at five thousand dollars, which sum he claims *in solido* from *George R. King* and his mother and sisters, who signed the letter to plaintiff and wife of the 10th April, 1852, and of *Harrison Rogers*, who has no interest in the land, but who was simply the bearer of the letter in question.

The above is a statement of the material facts, taken from the petition and the evidence; and it might well be questioned whether they disclose any cause of action whatever. No exception of this sort was taken, however, but the parties have treated the contest as a serious one; and the jury have assuredly so considered it, for they have given a verdict against all the parties, letter carrier as well as letter writers, *in solido*, for one thousand dollars.

A plea of prescription, interposed by *H. Rogers* in the District Court, and by his co-defendants in this court, will spare us the disagreeable task of investigating the merits of this family quarrel.

By Article 3501 of the Louisiana Code, actions sounding in damages for torts are prescribed by one year. Hennen's Digest, page 1272, No. 3. This year must be computed from and after the day of the commission of the tortious act. C. C., 3430; 3 An., 528.

The alleged tortious acts, committed by the defendants, were the writing and sending of a threatening letter, by all the defendants, except *Harrison Rogers*, and the carrying and delivery of the said letter by defendant *Harrison Rogers*. The destruction of the enclosures around the crop planted by plaintiff, which destruction aforded ingress to wandering cattle, and the consequent destruction of the crop, were not acts of the defendants. The counsel of plaintiff contends that plaintiff's agents would not have removed the inclosure, had it not been for the terror inspired by the threat, contained in the conclusion of the letter, that defendants would forcibly remove the enclosures, unless they were removed by plaintiff. Even so: But the fright caused by the reception of this letter cannot render defendants responsible for the subsequent acts of plaintiff's agents, unless those acts were the inevitable consequence of defendants' menaces; as if, for instance, the defendants had, with arms in their hands, compelled plaintiff's agents to remove the fences, under the apprehension of bodily harm had they not done so. But so far is that from being the case, that defendants offer to plaintiff's agents the option of removing the fences themselves, or of seeing them removed by defendants. And a day is fixed by the notice, two days after the reception of the same, on which defendants will proceed to remove the fences. This notice was given in ample time for the plaintiff's agents to have applied to the competent court for an injunction against the threatened act of defendants; and we cannot presume that the defendants would have disregarded an injunction, had such a writ been issued.

Under these circumstances, the act of destroying the fences is not to be viewed <span style="float:right">WARTELLE<br>*v.*<br>KING.</span> as the act of defendants; and the prescription mentioned above, commenced running from the 13th April, 1852. The first day of the year following the tortious act complained of, was the 14th April, 1852, and the last day of that year was the 13th April, 1853. This action was instituted only on the 14th April, 1853, on which day some of the defendants were served with citation. But the prescription was already acquired.

It is, therefore, adjudged and decreed, that the judgment of the District Court be reversed, and that there be judgment for defendants, with costs in both courts.